UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RUBEN OLVERA-MORALES, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> SAMUEL OLSON, ) <br> KRISTI NOEM, ) <br> PAMELA BONDI, ) <br> TODD M. LYONS, ) <br> RODNEY S SCOTT, ) <br> BRINSON SWEARINGEN, ) <br> ) <br> Respondents. ) | No. 2:25-cv-00643-JRS-MG |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Ruben Olvera-Morales ("Petitioner") is a Mexican citizen who entered the United States in 1998. On or about December 16, 2025, Immigration and Customs Enforcement ("ICE") Officers arrested Petitioner while he was working in Illinois and placed him removal proceedings under the Immigration and Nationality Act ("INA"). Petitioner now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 12 at 27. For the reasons explained below, the Court grants the petition to the extent that **within 7 days of this Order**, Respondents must either: (1) afford Petitioner an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Petitioner from custody, under reasonable conditions of supervision.

I.   **Background**

Petitioner entered the United States about 27 years ago and has lived there with his family, including U.S.-citizen children, ever since. Dkt. 12 ¶ 13. On December 16, 2025, ICE agents arrested Petitioner while he was working in Illinois and transferred him to the ICE Broadview

1

Facility in Chicago. Dkt. 19-1 at 2–3 (ERO Narrative). That day, Department of Homeland Security ("DHS") issued Petitioner an I-200 "Warrant for Arrest of Alien," which authorizes immigration officials "pursuant to sections 236 and 287 of the [INA] . . . to serve warrants for arrest of immigration violations." *Id.* at 3; dkt. 12 ¶ 22. DHS also served Petitioner with a "Notice to Appear," placing him in removal proceedings under 8 U.S.C. § 1229(a), and charging him with inadmissibility under § 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). Dkt. 19-2 at 4. The "arriving alien" checkbox is unmarked. *Id.* at 1.

At some point, Petitioner was transported to Clay County Jail in Brazil, Indiana, where he has been detained ever since. Dkt. 12 ¶ 3. Petitioner states that he was issued a Notice of Custody Determination, but there is no record that Petitioner moved for or received a bond hearing. *See id.*, ¶ 22.

## II. Discussion

Petitioner claims that his current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). *Id.*, ¶¶ 101–108. Respondents argue that Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained under the INA pursuant to 8 U.S.C. § 1226(a) because he will have the opportunity to receive a hearing; and that his detention is constitutional. Dkt. 19.

The Court finds that Petitioner's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

### A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain

certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond . . . ; or
> > >
> > > (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*,

3

24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### B. Petitioner Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

Petitioner argues that the statute's text and framework make it so that he can only be detained under § 1226(a).[1] Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission" according to § 1225(a)(1),

---

[1] Petitioner's reply makes several additional arguments related to jurisdiction, exhaustion, and injunctive relief. The Court does not address these arguments because they do not respond to anything in Respondents' return to the order to show cause.

who is not covered by the narrower provisions for "arriving aliens" in § 1225(b)(1), and who is "not clearly and beyond doubt entitled to be admitted." Dkt. 19 at 6–8.

### i. Statutory Text

Though Petitioner disputes that he fits the description of an "applicant for admission," *see* dkt. 12 ¶ 72, the definition provided in § 1225(a)(1) shows that he fits this description. There is no dispute that Petitioner is an "alien" who is "present in the United States" who "has not been admitted." Also, because Petitioner has been served with a Notice to Appear, it is evident that he is not "clearly and beyond a doubt entitled to be admitted." Nevertheless, Respondents do not explain how Petitioner fits the third criteria in § 1225(b)(2)(A) of "seeking admission" into the United States nor do they clearly contend that "seeking admission" is somehow *not* a criterion.[2]

As the Seventh Circuit recently explained, "seeking admission" under § 1225(b)(2)(A) cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[3] "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–

---

[2] Respondents cite recent district court decisions finding that § 1225(b)(2)(A) applies to all unadmitted aliens because they are "applicants for admission," but do not explain whether Petitioner fits the "seeking admission" criteria. *See* dkt. 19 at 2, 10. And Petitioner does not attempt to distinguish these cases and explain why they don't apply here.  Regardless, after reviewing these cases, none of which are binding, this Court finds that Petitioner's interpretation of the statute's text and context is more persuasive and applicable to the facts presented by his petition.

[3] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Furthermore,

> it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an "applicant for admission" to "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.

*Id.*

Unlike "applicant for admission," "an alien seeking admission" is not defined within the statute. Therefore, in construing the statutory language, the Court gives the text its plain meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). The plain meaning of "seeking admission" did not apply to Petitioner when immigration authorities arrested him in December of 2025. *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5, 2025), dkt. 12 ¶ 85 (collecting cases). "Seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As this Court explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Sanchez v. Hott*, No. 1:25-cv-02137-JRS-TAB, 2025 WL 3765959, at *6 (S.D. Ind. Dec. 30, 2025); *see also Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years

6

and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission.").

Petitioner is plainly not "seeking admission." If anything, Petitioner is "seeking to remain in the United States" not seeking admission. *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). In sum, the fact that Petitioner is not "seeking admission" supports the conclusion that § 1225(b)(2)(a) does not apply to him.

###    ii. Statutory Context and Framework

Respondents' interpretation of § 1225(b)(2)(A) does not make sense when read, as it must be, in the context of the rest of § 1225 and the INA's statutory framework. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a border or a designated port of entry. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which

7

they believe aliens are being brought into the United States"). The statute further explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), which further demonstrates that § 1225 applies broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

As Respondents concede, § 1225 as a whole governs "inspection." Dkt. 19 at 7. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S. Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) *et seq*. (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). However, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025).

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Petitioner because he is an "alien," who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout

8

immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of aliens not eligible for a bond hearing are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting Respondents' reading would render the amendments to § 1226(c) completely unnecessary.

### C. Opportunity for Bond Hearing

In the alternative, Respondents argue that Petitioner is being lawfully detained under § 1226a "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 19 at 14. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney

9

> General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Petitioner will have a bond hearing. In fact, Respondents contend that Petitioner is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition.

Petitioner has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, his detention pursuant to § 1226(a) is currently unlawful.

### III. Scope of Relief

Petitioner is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing. Dkt. 1 at 5. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Petitioner's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a) and its regulations.

### IV. Conclusion

The Court grants the petition to the extent that **within 7 days**, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Petitioner from custody, under reasonable

conditions of supervision. Respondents must file documentation certifying that they have provided Petitioner with a bond hearing **within 48 hours**, **including apprising the Court of the results of the hearing**. If Respondents release Petitioner, then they must file documentation certifying his release. The **clerk is directed** to enter final judgment.

    **SO ORDERED.**

Date: 1/20/2026

                                          JAMES R. SWEENEY II, CHIEF JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

All Electronically Registered Counsel